JOHNSON GRAVES *v.* THE STATE.

1. CONSTRUCTION OF STATUTES. — Note in this case the collocation and application of certain important practical rules controlling the construction of statutes.

2. SAME — CASE STATED. — An act of 1879 changes the times of holding the

District Courts in the Twenty-second District, and contains an "emergency clause," declaring it to take effect from and after its passage. A *proviso* in the act, however, requires that the first term be held in C. County; and this, under other provisions of the act, cannot be done until the third Monday of September, 1879. *Held*, notwithstanding the "emergency clause," that the effect of the *proviso* is to postpone any change in the times of holding the terms in said district until the said term can be held in the county of C., and that the antecedent act controlling the subject remains in force until such term can be held.

3. CONSTITUTIONAL LAW—LOCAL AND SPECIAL LAWS.—The case of *Cordova* v. *The State, ante*, p. 207, cited and approved, sustaining the constitutionality of the act of 1876 requiring five terms of the District Court of Bexar County to be held in each year, the said act not being a "local or special law," in the sense of the constitutional inhibition of the enactment of local or special laws until publication thereof be first made.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

The opinion discloses all material facts.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. On April 22, 1879, the appellant was convicted of theft of a mare, and his punishment assessed at five years' confinement in the State penitentiary. There was no motion for a new trial, nor is there any charge of the court, bill of exceptions, or statement of facts embraced in the transcript. The only question presented by or arising upon the record, in such manner as that it can be inquired into, is raised by a motion in arrest of judgment, set out in the record, and which was overruled in the court below.

It is averred, in the motion in arrest of judgment, "that the session of the District Court on the 22d day of April, A. D. 1879, was illegally held, and this verdict of the jury and judgment of the court is absolutely null and void; that, at the time of said trial, — to wit, on the 22d day of April, A. D. 1879, — the law did not authorize the sitting

of this court, as will more fully appear by reference to an act passed by the 16th Legislature, and approved April 18, A. D. 1879, which is hereto annexed for reference, etc. Hence he prays an arrest of judgment in his case." This presents the naked question, Was the District Court of Bexar County authorized to hold a regular session at the time the appellant was tried?

Since the adoption of the present Constitution, the Twenty-second Judicial District is composed of the counties of Comal, Bexar, and Atascosa, and by ordinance appended to the Constitution, the terms of the courts were required to be held as follows: In the county of Comal on the first Mondays in April and October, and to continue in session two weeks; in the county of Atascosa, on the second Mondays after the first Mondays in April and October, and to continue in session two weeks; in the county of Bexar, on the fourth Mondays after the first Mondays in April and October, and to continue in session until the business should be disposed of. Afterwards, on May 30, 1876, the Legislature passed an act entitled "An act prescribing the times of holding the District Courts in the Twenty-second District." By this act it was provided the courts should be held, in each year, "in the county of Atascosa on the first Mondays in January and September, and may continue in session two weeks; in the county of Comal, on the third Mondays in January and September, and may continue in session two weeks; in the county of Bexar, on the first Monday in February, and may continue in session until the business is disposed of; on the first Monday in April, and may continue in session until the business is disposed of; on the first Monday in June, and may continue in session four weeks; on the first Monday in October, and may continue in session until the business is disposed of; on the first Monday in December, and may continue in session four weeks."

On April 18, 1879, another act of the Legislature was

approved, which is entitled " An act prescribing the time
of holding the District Courts in the Twenty-second Judi-
cial District," and the first section of which is as follows :
" But the District Courts of the Twenty-second Judicial
District shall be held as hereinafter specified, in each year, to
wit : In the county of Comal, on the third Mondays in Janu-
ary and September, and may continue in session two weeks ;
in the county of Atascosa, on the third Mondays in October
and April, and may continue in session two weeks ; in the
county of Bexar, on the first Mondays in November, Feb-
ruary, and May, and may continue in session from said first
Mondays in November and February ten weeks, and from
said first Monday in May eight weeks ; *provided*, that the
first term of said District Court held under the provisions of
this act shall be held, as herein directed, in Comal County."

In order to a proper understanding and application of this
act of 1879, and of the precise effect of this *proviso* at the
end of the first section, some light may be derived by
noticing, first, the changes made by it in the act of 1876,
which immediately preceded it, and then by noticing the
several provisions of the act of 1879, and the object and
intention of the Legislature in enacting it.

By ordinance of the Constitutional Convention the dis-
trict was created, and by the same authority the courts
were required to commence and to follow in the different
counties in the following order, to wit : to commence in
Comal County ; next in order came Atascosa, and it was suc-
ceeded by Bexar ; and two terms annually of the court were
required to be held in each county in the district, as pre-
scribed by the Constitution, art. 5, sect. 7.   By the act of
1876 the courts were to follow each other in this order :
First, Atascosa County ; second, Comal ; and, third, Bexar ;
in which last-named county five terms were provided for,
which the Legislature was permitted to do under the latter
portion of sect. 7, art. 5, of the Constitution.   The con-
stitutionality of this act, which provides for more than two

terms, has been questioned, and has been before this court more than once, and its validity upheld. And by the act of 1879 the order prescribed is: first, Comal; second, Atascosa; third, Bexar; and, with reference to Bexar County, the number of terms are limited, and the times of holding them, as prescribed in the act of 1876, are changed. A change is made by the act of 1879, both as to the number of terms and as to the times they are required to be held. From this statement we may arrive at a proper conclusion as to what the law was prior to the passage of the act of 1879, and what changes were made by it, in order to avail ourselves of the light thus afforded in applying it, by ascertaining what defect or inconvenience, if any, existed in the former law which it was intended should be cured, remedied, or changed by the later enactment. Here the most important change noticeable is as to the places at which the courts are to commence, and the fact that by the act of 1879 the courts in the district seem to be required to commence at Comal County, as at first directed by the ordinance of the Constitutional Convention, whereas by the act of 1876 they were required to commence at Atascosa. This change would be more apparent but for the portions of both acts prescribing additional terms for Bexar County. Still, it would seem that at least one feature of the change relates to the time and place for commencing the two semi-annual terms required to be held in each county by the Constitution.

In order to determine the precise effect of the proviso in question, we do not propose to set up any mere personal or arbitrary construction or rule of interpretation of our own, but to bring to our aid the rules laid down by recognized canons of construction, laid down by elementary writers of recognized authority, and deducible from well-considered adjudications. We cannot do better here than to make a few quotations from a standard author. After speaking of the efforts of others, of which he says: "Many efforts

have been made to lay down precise and positive rules for the construction of statutes, and, in order to facilitate this, a nomenclature has been sought to classify different modes or species of interpretation. So, Vattel uses the terms *extensive* and *restrictive* interpretation; Rutherford, *liberal natural*, and *mixed;* and Mackeldey, *authentica*, *usualis*, and *doctrinalis*. Professor Lieber has endeavored to carry this refinement to still greater length. * * * And to elucidate the use of these definitions, and the application of these rules, cases actual or possible are resorted to, exhibiting many varieties of doubt and difficulty. So, if by the terms of a treaty a town is not to be surrounded by walls, the question is asked whether, upon a proper construction, it may be enclosed with fosses and ramparts. So, the law condemns to death him who strikes his father; shall we punish him who strikes and shakes his father to recover him from a fit? So, when it was enacted that whosoever drew blood in the public highway should be severely punished, a barber opened a vein of a person taken in the street with apoplexy; was he guilty, or not?

" These (the writer continues) and similar discussions have amused the fancy and exhausted the arguments of text-writers. I cannot, however, consider them of much value for the student of jurisprudence. Ours is eminently a practical science. It is only by an intimate acquaintance with its application to the affairs of life, as they actually occur, that we can acquire that sagacity requisite to decide new and doubtful cases. Arbitrary formulæ, metaphysical subtleties, fanciful hypotheses, aid us but little in our work. * * * Still, although we may regret the curious nomenclature and the arbitrary rules to which I have referred, it is not to be supposed that a subject so important as the construction and interpretation of laws is to be left to the mere arbitrary discretion of the judiciary. This would be to put in our hands power really superior to that of the Legislature itself. There must be some general principles

that control the matter; and I believe it will be found that the principles which control in the interpretation of statutes may, for all practical purposes, be not inaptly arranged under the same heads and reduced analytically to the same elements as all other branches of legal inquiry. In all cases of judicial examination we have two great heads of investigation: First, the object to be attained. * * * Second, the means to be employed. * * * First: *The object to be attained*, — that is, as a general rule, the intention of the Legislature. Second: *The means to be employed*, — *i.e.*, what facts within and without the statute are to be inquired into to ascertain the intent of the doubtful phraseology." Sedgw. on Stat. & Const. Law, 226 *et seq*.

Lord Chief Justice Tindal is quoted as having said that " the only rule for the construction of acts of Parliament is, that they should be construed according to the intent of the Parliament which passed the act." *Freeman* v. *City of New York*, 5 Sandf. 16, cited in Sedgw. on Stat. & Const. Law, 231. The rule, says Mr. Sedgwick, is " cardinal and universal that, if the statute is plain and unambiguous, there is no room for construction or interpretation." Sedgw. on Stat. & Const. Law, 231. " Ordinarily, the courts have no concern with the *policy* or the *motive* of the Legislature; it is the intent." Id. 230. " It is only when the language is ambiguous that the courts are called on to construe or interpret, and then the object is to ascertain the intent of the Legislature." Id. 231.

In considering the means to be employed to arrive at this result, it is said, in the times of Elizabeth, agreeably to Lord Coke, four things are to be considered: " First, What was the common law before making the act? Second, What was the mischief and defect for which the common law did not provide? Third, What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth? and, fourth, the true reason of the remedy." Id. 235. Another rule is that, in construing any part of a

law, the whole must be considered ; the different parts reflect light on each other ; and, if possible, such a construction is to be made as will avoid any contradiction or inconsistency. And in searching in the statute for the legislative intent, when any cause of doubt arises, although apparently the doubt attaches only to a particular clause, the whole statute is to be taken together. Sedgw. on Stat. & Const. Law, 237, where cases are cited from Pennsylvania, Massachusetts, and Michigan.

On the subject of *provisos* in a statute : " The proviso is generally intended to restrain the enacting clause, and to except some thing which would otherwise have been within it, or in some measure to modify the enacting clause." *Wayland* v. *Southard*, 10 Wheat. 130. " It is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate or the other be exercised, unless in the case provided." *Vorhees* v. *Bank of United States*, 10 Pet. 449. " The office of a proviso, generally, is either to except some thing from the enacting clause, to restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview." Potter's Dwar. on Stat. 118, and note 11. See also American Rules, Id. 143, on the general subject.

In construing the act under consideration, with these and other recognized rules of construction in view, and testing the act by its own internal evidence as to its purport and effect, and the intention of the Legislature in enacting it, we are of opinion that at least one manifest intention was to change the times of holding the courts in the Twenty-second Judicial District, and to fix a different time and place for commencing the courts from that prescribed by the act of 1876 ; and that, aside from the *proviso* to the first section of the act, there is internal evidence within it that the Legislature did not contemplate that it would go into effect

immediately, as indicated by the times stated at which the courts are required to be held, in connection with the date of its passage. The time first mentioned for holding the courts in Atascosa County is in October, and the time first mentioned for Bexar County is in November; so that, by commencing the terms for the district in Comal County on the third Monday in September, and holding for two weeks; and in Atascosa County on the third Monday in October, and holding for two weeks; and in Bexar County on the first Monday in November, there would, to say the least, be no clashing or confusion, nor any conflict with the times fixed by previous law. And by this construction the provisions of the third section of the act, which repeals all laws and parts of laws in conflict with the act of 1879, would stand in full force.

In harmony with these views, and giving to the *proviso* the effect and interpretation indicated by the authorities above cited, we are of opinion it must be held that its effect is to postpone the holding of the courts, under the acts to which the *proviso* is appended, until a court can be held under the terms of the act itself, in Comal County, and which could not be done at any time after the date of the act until the third Monday in September, 1879; and, inasmuch as the main object of the act is, as expressed in the title, to prescribe the times of holding the courts in that judicial district, and because the time for holding the first court in Comal County is, by the *proviso*, postponed, and cannot go into effect until September, 1879, that it controls and carries with it the other minor features of the act.

By this construction, all the provisions of the bill can be made to harmonize, and leave the former law of force and operation until the act of 1879 can be put in force in all the counties of the district. We think this more reasonable than to hold that the Legislature intended to leave the several counties without courts during all the time intervening between the date of this act and the time mentioned

in the *proviso*. The first term of the court held under the provisions of the act can be held in Comal County. This view is not materially weakened by the emergency clause, which gives, as the emergency for the act going into effect from its passage, not that the courts may commence to be held under it, but because the session is approaching its conclusion. The most natural conclusion to which we can come, from the act itself, when construed in the light of surrounding circumstances, is that the act had been prepared without the *proviso*, and with the design that it should go into effect at once ; but that, for some cause operating upon the minds of the Legislature, of which we cannot consider, it was discovered that it would not have the effect intended, and that therefore the *proviso* was inserted, in order to limit and fix a time when it should go into effect. *Womack* v. *Womack*, 17 Texas, 1.

If it is intended by the first clause in the motion in arrest of judgment to question the constitutionality of that portion of the act of 1876 which provides for the holding of more than two terms of the District Court in Bexar County, we reply that this is one of the material questions presented and carefully considered in the case of *Cordova* v. *The State*, decided at the present term, *ante*, p. 207, in which the law is held to be constitutional. Believing that the *proviso* controls the time at which the act goes into effect, and that until that time the prior law remains in force, we find no error in the judgment upon the motion, and that it was properly overruled.

The judgment of the District Court is affirmed.
*Affirmed.*